```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
J & J SPORTS PRODUCTIONS, INC.,              CASE No.: 18-cv-02131-BMC

                      Plaintiff,             PLAINTIFF'S MEMORANDUM OF LAW
                                             IN OPPOSITION TO DEFENDANT'S
       - against -                           MOTION TO DISMISS FOR FAILURE
                                             TO STATE A CLAIM
TRUNG DANG, et al.,

                      Defendants.
-----------------------------------------------------------X
```

Plaintiff J & J Sports Productions, Inc., by and through its undersigned counsel, M.L. Zager, P.C., submits the following Memorandum of Points and Authorities in Opposition to Defendant Trung Dang's Motion to Dismiss for Failure to State a Claim. (Dkt. No. 20, et seq.). For the reasons set forth herein, Plaintiff respectfully requests that Defendant Trung Dang's Motion to Dismiss be denied.

## STATEMENT OF FACTS

Plaintiff was granted the exclusive nationwide commercial distribution rights to the *Saul Alvarez v. Liam Smith WBO World Super Welterweight Championship Fight Program*, telecast nationwide on Saturday, September 17, 2016. Complaint ¶ 16 (Dkt. No. 11). Plaintiff's distribution rights encompassed all undercard events as well as the main event. Id. Pursuant to the contract granting Plaintiff its distribution rights, Plaintiff entered into sub-licensing agreements with various commercial establishments to permit the public exhibition of the Program. Id. at ¶ 17. Plaintiff alleges that, without its authorization, Defendants unlawfully intercepted, received and exhibited the Program at their commercial establishment located in Brooklyn, New York. Id. ¶ 19. As a result of this, Plaintiff brought this action against Defendants for violations of 47 U.S.C. § 605, et seq. and 47 U.S.C. § 553, et seq. Defendant Trung Dang

(hereinafter "Defendant") has now filed a Motion to Dismiss for failure to state a claim. Plaintiff opposes Defendant's Motion.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. To survive a Rule 12(b)(6) motion to dismiss, a Complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In this regard, the Complaint must have "facial plausibility," which exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 622, 678 (2009). Nonetheless, the Court must still "view the pleadings in the light most favorable to, and draw all reasonable inference in favor of, the non-moving party." Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014) (citation omitted). Finally, the Defendant bears the burden of proving that Plaintiff's Complaint fails to state a claim. In re Morgan Stanley Mortg. Pass-Through Certificates Litigation, 2012 WL 2899356, *1 (S.D.N.Y. July 16, 2012).

## ARGUMENT

I. PLAINTIFF'S COMPLAINT VALIDLY STATES ITS CLAIMS AGAINST INDIVIDUAL DEFENDANT DANG.

In a piracy action, an individual may be held liable if he had "a right and ability to supervise the violations and . . . a strong financial interest in such activities." J & J Sports Productions, Inc. v. J.R.'Z Neighborhood Sports Grille, Inc., 2010 WL 1838432, *2 (D.S.C. Apr. 5, 2010); see also J & J Sports Productions, Inc. v. Mikhael, 2016 WL 2984191, *2 (C.D.Cal. May 19, 2016). This is the test utilized in the Eastern District of New York, J & J Sports Productions, Inc. v. Welch, 2010 WL 4683744, *6 (E.D.N.Y. Nov. 10, 2010); J & J Sports

2

Productions, Inc. v. Meyers, 2007 WL 2030288, *3 (S.D.N.Y. July 16, 2007), and is noted in the cases on which Defendant relies. See e.g. J & J Sports Productions, Inc. v. 291 Bar & Lounge, LLC, 648 F.Supp.2d 469, 473 ("the complaint must establish that the individual had a 'right and ability to supervise' the violations, as well as an obvious and direct financial interest in the misconduct"). In arguing for dismissal, Defendant states:

> In *J & J Sports Productions v. 291 Bar & Lounge, LLC*, the plaintiff made no allegation that the individual defendant was present for the violation, that she authorized or controlled it, or that she reaped commercial profit from it, and the court concluded that it was inappropriate to hold the individual defendant jointly and severally liable along with the business entity. 648 F. Supp. 2d 469, at 473 (E.D.N.Y July 21, 2009) ("To the extent [plaintiff] wishes to assert liability against an individual ... [plaintiff] should make adequately detailed allegations in the complaint, beyond the conclusory and vague charge of mere ownership of the offending entity.") Courts have regularly followed the line of reasoning set forth in *291 Bar* and rejected individual liability where a plaintiff's allegations amount to mere labels and conclusions . . . ."

Defendant's Memorandum at 3 (underline emphasis added; citations in original; further citations omitted). Defendant relies on Garden City Boxing Club, Inc v. 135 Hunt Station Billiard, Inc., 2012 WL 4328355 (E.D.N.Y. June 21, 2012), which, in turn cited J & J Sports Productions, Inc. v. Daley, 2007 WL 7135707 (E.D.N.Y. Feb. 15, 2007), for the same general principles. See Defendant's Memorandum at 4.[1]

While Defendant's reliance on 291 Bar & Lounge and cases that have relied on 291 Bar & Lounge is certainly expedient, it is misplaced. Most notably, Plaintiff's allegations go well beyond the "conclusory and vague charge of mere ownership of the offending entity." 291 Bar & Lounge, 648 F.Supp.2d at 473. For example, paragraph 9 of the Complaint alleges:

> Plaintiff is informed and believes, and alleges thereon that on Saturday,

---

[1] Through reference to a case from the District of Maryland, J & J Sports Productions, Inc. v. MayreallI, LLC, 849 F.Supp.2d 586 (D. Md.2012), Defendant also cites to Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc., 804 F.Supp.2d 108, 112 (E.D.N.Y. 2011), for similar propositions. See Defendant's Memorandum at 3. Plaintiff discusses MayreallI below.

3

September 17, 2016 (the night of the *Program* at issue herein, as more specifically defined in paragraph 16), Defendant, Trung Dang had the right and ability to supervise the activities of Tequilitas 2, Inc. which included the unlawful interception of Plaintiff's Program.

Complaint ¶ 9. In paragraph 11 of the Complaint, Plaintiff specifically alleges:

11. Plaintiff is informed and believes, and alleges thereon that on Saturday, September 17, 2016 (the night of the *Program* at issue herein, as more specifically defined in paragraph 16), Defendant Trung Dang specifically directed or permitted the employees of Angelitos de Noche to unlawfully intercept and broadcast Plaintiff's *Program* at Angelitos de Noche or intentionally intercepted, and/or published the *Program* at Angelitos de Noche himself. The actions of the employees of Angelitos de Noche are directly imputable to Defendant Trung Dang by virtue of his acknowledged responsibility for the operation of Angelitos de Noche.

Complaint ¶ 11 (underline emphasis added). These are not vague statements of "mere ownership" or even vague allegations of general supervisory authority, but allegations that Defendant had the right and ability to supervise the unlawful interception on September 17, 2016. Similarly, paragraphs 12 and 13 of the Complaint allege a direct financial interest and increased profits on September 17, 2016 as a result of the unlawful interception. Complaint ¶¶ 12-13. Plaintiff acknowledges that it does not describe in intimate detail how Defendant accomplished the interception and broadcast (e.g., Plaintiff does not allege who turned on the televisions, or who changed the channel), or how much profit specifically was made as a result thereof, but such specificity cannot be ascertained absent discovery. See G & G Closed Circuit Events, LLC v. Miranda, 2014 WL 956235, *4-5 (D.Ariz. March 12, 2014) (upholding similar allegations against individual defendant and concluding that "[w]hile plaintiff may discover more details about Miranda's specific duties and decisions as this case develops, plaintiff has adequately alleged that Miranda had the right and ability to supervise the infringing activity and that he had an obvious and direct financial interest in that activity.")

4

In what appears to be an attempt to track language of 291 Bar & Lounge, Defendant states:

> The Complaint is completely void of any actual fact(s) indicating that Mr. Dang was present at the bar when the Program was shown, that he personally authorized the interception and display of the Program, or that he authorized advertisements for the display of the Program or the imposition of a cover charge to profit from the display.

Defendant's Memorandum at 2. As noted above, the allegations in this Complaint go far beyond the allegations of 291 Bar & Lounge. 291 Bar & Lounge is also not the apotheosis of individual liability analysis in this Court. See e.g. J & J Sports Productions, Inc. v. Welch, 2010 WL 4683744, *6 (E.D.N.Y. Nov. 10, 2010) ("finding individual liability where complaint alleged that defendant 'was the individual with supervisory capacity and control over activities occurring within the Establishment on [the date of violation]."); J & J Sports Productions, Inc. v. McAdam, 2015 WL 8483362, *3 (E.D.N.Y. Dec. 9, 2015) ("In this case, Plaintiff alleges that [the individual defendants] supervisory capacity and control over the activities and internal operating procedures at [the establishment], and received a financial benefit from its operations . . . . Courts have found similar allegations sufficient to establish individual liability under Section 605(a)") (internal citation omitted).

Next, the specific factors identified in 291 Bar & Lounge, while they may be considered in evaluating individual liability, are hardly prerequisites. 291 Bar & Lounge does not mandate physical presence; rather, the court was simply noting factors that may be considered for individual liability. Id. at 473. Next, as a practical matter, it would be nearly impossible to make an allegation of physical presence, as it would require that 1) Plaintiff know what Defendant looks like, and, more importantly, that the Defendant was somewhere in the establishment that was visible to customers. For instance, if Defendant was, in fact, present on the night in question

5

but in a back office, Plaintiff could not make such an allegation. Presumably Defendant will not argue that if he hides well enough, he may avoid liability. A second practical problem with this requirement of physical presence is that it ignores modern technology. If Defendant truly were required to be *inside* the establishment to commit an act of piracy, he could simply step outside and order the Program via a smartphone. In Joe Hand Promotions, Inc. v. Jorgenson, 2013 WL 64629 (E.D.Wis. Jan. 4, 2013), the court noted the absurdity of this argument:

> Rather, defendant seems to suggest that the mere fact that Jorgenson was not present at the exact time the event was broadcast absolves him of any responsibility. Surely, defendants do not, and cannot, argue that Jorgenson is not liable for anything that occurs at his business establishment while he is not physically present.

Id. at *3. In Joe Hand Promotions, Inc. v. Tickle, 2016 WL 393797 (M.D.Pa. Feb 2, 2016), the district court also rejected this argument and found the individual defendant, who was identified on the liquor license, liable:

> First, in his official capacity as well as in his capacity as a registrant on his establishment's liquor license, Defendant . . . had the "right and ability to supervise" the piracy at issue as a matter of law. *It is not necessary that Defendant violated the law himself or that he was present for the violation.* Based on Defendant's official role at the establishment, he was responsible for the acts of his agents, his bartenders and other staff, and it is enough to hold him vicariously liable to the extent that one of his employees committed the piracy at issue.

Id. at *13 (emphasis added). Next, the Tickle Court concluded:

> Defendant enjoyed "a direct financial interest in the violation." That is to say, the enhanced profits earned from attracting patrons with a bootlegged program were directly related to the profits earned by Defendant's establishment, and by extension, Defendant himself would reap on a given night. That is a mere consequence of everyday business incentives. It is also why lawmakers have enacted anti-piracy legislation: absent such penalties necessary to curb the evident moral hazard of such commercial piracy, the establishment owner would collect an ill-gotten gain, while the program distributor would incur all the costs associated with production and transmission.

Id. at *14; see also Joe Hand Promotions, Inc. v. Trenchard, 2014 WL 854537, *2 (D.Conn. March 3, 2014).

6

Defendant also states that Plaintiff does not allege that Defendant Dang "authorized advertisements for the display of the Program or the imposition of a cover charge to profit from the display." Defendant's Memorandum at 2. Again, these are but factors to be considered in determining a financial interest, not prerequisites.[2] Presumably Defendant does not mean to suggest that an establishment *cannot* have a financial interest in a violation absent advertising or a cover charge. In J & J Sports Productions, Inc. v. Brady, 672 Fed.Appx. 798 (10th Cir. 2016) (unpub.), the Tenth Circuit evaluated the above factors and determined that the individual defendant would have been liable thereunder.[3] With respect to the financial interest prong, the Tenth Circuit noted:

> And on fight night, she was able to secure the patronage of thirty-seven customers while exhibiting the fight at no cost to the bar. That the bar did not charge an entry fee is irrelevant, as she had an obvious and direct financial interest in beer sales to bar patrons.

*Id.* at 802. For the same reasons, there is no requirement of actual authorization by Mr. Dang. If there was, Defendant could simply turn a blind eye to what was occurring in his establishment and escape liability. See Jorgenson, 2013 WL 64629 at *3.

After his block quote from 135 Hunt Station Billiard, Defendant states:

> Similarly, here Plaintiff has not, nor can it allege in good faith that Defendant Dang was present on the night of the violation. Indeed, Plaintiff's allegations that Mr. Dang was the individual with supervisory capacity and control over activities on the date of violation are based on nothing more than on speculation and conjecture as stated in *J & J Sports Prods. v. Daley* and here can only be stated upon information and belief.

---

[2] Defendant's use of "profit," while perhaps colloquial, is misplaced. The law does not require a "profit," it requires a financial interest. While the two may overlap, they are not synonymous.

[3] In Brady, there was no corporate owner of the establishment; the defendant operated the establishment as a d/b/a only, and there was no legal distinction between the individual and the establishment. See Brady, 672 Fed.Appx. at 801. While the Tenth Circuit ultimately upheld liability under this standard, it nonetheless addressed the individual liability test, which the defendant had argued should be applied. Id. at 801-02.

Defendant's Memorandum at 4-5. The mistaken belief that "presence" is required was discussed above. With respect to the rest of this statement, while somewhat difficult to decipher, Defendant appears to be saying that *because* Daley found allegations to be insufficiently speculative, the allegations herein are *per se* insufficiently speculative. Of course, without any actual analysis of the issue or comparison of the allegations, there is no way to draw this conclusion with any measure of sufficiency; this is particularly true given that Defendant has the burden on a motion to dismiss. Defendant also may be suggesting that the Complaint is deficient because allegations are made on information and belief; there is a similar statement in Daley. Daley, 2007 WL 7135707 at *3 ("The Complaint sets forth only conclusory allegations based on information and belief . . . ."). This is irrelevant. Martin v. Leading Edge Recovery Solutions, LLC, 2012 WL 3292838, *1, n. 2 (N.D.Ill. Aug 10, 2012) ("Even after *Iqbal* and *Twombly*, however, there is no prohibition on alleging claims based on information and belief[.]").

Defendant also relies on MayrealII, LLC, supra, a case out of the District of Maryland. Defendant's Memorandum at 3, 5. The District of Maryland was also evaluating a far less specific complaint. In J & J Sports Productions, Inc. v. Dougherty, 2012 WL 2094077 (E.D.Pa. June 11, 2012), the district court rejected arguments similar to those raised by Defendant, and distinguished those cases that had far fewer specific allegations against the individual defendants, including that of J & J Sports Productions, Inc. v. MayrealII, LLC, 849 F.Supp.2d 586 (D.Md.2012), on which Defendant relies, and 291 Bar & Lounge, LLC. In Dougherty, the district court held:

> Defendants urge this Court to follow a number of cases in which other courts have dismissed similar claims by [Plaintiff]. First, defendants cite *J & J Sports Productions, Inc. v. 291 Bar & Lounge, LLC,* 648 F.Supp.2d at 473. However, in that case, [Plaintiff] failed to allege a "'right and ability to supervise' the violations" or any "direct financial interest in the misconduct." . . . Unlike the *291 Bar* case, [Plaintiff] has specifically pled those facts in this case.

8

Dougherty, 2012 WL 2094077 at *3. Similarly, here, Plaintiff has alleged both a "right and ability to supervise" the activity and a financial interest (to wit, increased profits from the broadcast). Complaint ¶¶ 9-13. Next, the Dougherty Court distinguished MayrealII, LLC, and noted that in MayrealII, LLC the sole allegation against the individual was:

> Defendants and/or their agents, servants, workmen or employees did unlawfully publish, divulge and exhibit the Program at the time of its transmission at the addresses of their respective establishments.

Dougherty, 2012 WL 2094077 at *3 (citations in original). As noted above, the allegations herein are far more detailed than those at issue in MayrealII, LLC.

The case of Joe Hand Promotions, Inc. v. Mooney's Pub Inc., 2014 WL 4748272 (C.D.Ill. Sept. 24, 2014), is also instructive. In Mooney's Pub the district court rejected a 12(b)(6) challenge brought by the individual. In upholding the complaint, the court held:

> In this case, Plaintiff did not simply plead that Michelle Bruce is "an officer, director, shareholder and/or principal of Mooney's Pub, Inc." Instead, Plaintiff has put Defendants on notice that its theory of Michelle Bruce's liability rests on the factual predicates that she had supervisory capacity and control over the bar and also stood to financially benefit from its operations. Although these allegations might appear to formulaically track the required elements for legal liability, they "present a story that holds together" if one draws all inferences in favor of Plaintiff . . . At this stage, it is reasonable to infer that Michelle Bruce had a financial interest in Mooney's Pub based on her alleged ownership interest in the venture. When coupled with the allegation that she exercised supervision or control over the premises at that time, Joe Hand's allegations are sufficient to state a claim for vicarious liability. Defendants' motion to dismiss the complaint against Michelle Bruce for failure to state a claim is denied.

Id. at *3 (internal citation omitted).

IV. PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND ITS COMPLAINT.

If this Court is inclined to grant Defendant's Motion for any reason, this Court should grant Plaintiff leave to amend its Complaint to cure any deficiencies therein. Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend a complaint should be freely given "when justice

so requires." Fed.R.Civ.P. 15(a); See Foman v. Davis, 371 U.S. 178, 182 (1962). There have been no prior amendments herein.

## CONCLUSION

Plaintiff's Complaint sufficiently states its causes of action against Defendant and thus Defendant's Motion to Dismiss should be denied. In the alternative, Plaintiff respectfully requests leave to amend to cure any potential deficiencies.

WHEREFORE, Plaintiff respectfully requests that Honorable Court issue an Order denying Defendant's Motion to Dismiss, and Order any additional relief this Court deems just and proper.

Dated: July 23, 2018

*/s/ Robert B. Hunter*
**M.L. ZAGER, P.C.**
By: Robert B. Hunter, RH2254
Attorneys for Plaintiff
461 Broadway
PO Box 948
Monticello, NY 12701
RHUNTER@MZAGER.COM
Tel: 845-794-3660
Fax: 845-794-3919